**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **JANELL CRAGHEAD,** for herself and all others similarly situated, | : : : | |
| Plaintiff, | : : | Case No.: 3:22-cv-308 |
| v. | : : | District Judge Michael J. Newman |
| **TRAIL TAVERN OF YELLOW SPRINGS, LLC,** *et al.*, | : : : | Magistrate Judge Peter B. Silvain, Jr. |
| Defendants. | : : | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT**

Named Plaintiff Janell Craghead and Opt-In Plaintiffs Loren George, Justin Hall, Ryan Jackson, Allison Justice, Lisa Bronson, Jacob Schneider, Thuron Ham, and Damien Jones (collectively "Plaintiffs"), together with Defendants Trail Tavern of Yellow Springs, LLC, Don Beard, and Christine Beard (collectively "Defendants") (together the "Parties"), jointly through their counsel, hereby move the Court for entry of an Order, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b):

(1) Approving the Parties' settlement agreement, including the settlement amounts, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(2) Approving the individual settlement payments to Plaintiffs;

(3) Approving the payment of attorneys' fees and litigation expenses to Plaintiffs' counsel; and

(3) Dismissing the lawsuit on the merits, with prejudice.

A memorandum in support of the Parties' motion is attached.

Respectfully submitted,

| | |
|---|---|
| */s/ Carrie J. Dyer* | */s/ Shannon L. Wahl (per email auth.)*_____ |
| Carrie J. Dyer (0090539) | Randall M. Comer (0072567) |
| *Carrie@MansellLawLLC.com* | Shannon L. Wahl (0084074) |
| Greg R. Mansell (0085197) | Benjamin D. Noll (0100251) |
| *Greg@MansellLawLLC.com* | **Martin, Browne, Hull & Harper, PLL** |
| Rhiannon M. Herbert (0098737) | 500 N. Fountain Ave. |
| *Rhiannon@MansellLawLLC.com* | P.O. Box 1488 |
| **MANSELL LAW, LLC** | Springfield, OH 45501 |
| 1457 S. High St. | Phone: (937) 324-5541 |
| Columbus, OH 43207 | Fax: (937) 325-5432 |
| Ph: 614-610-9899 | *rcomer@martinbrowne.com* |
| Fax: 614-547-3614 | *swahl@martinbrowne.com* |
| | *bnoll@martinbrowne.com* |
| *Counsel for Plaintiff* | |
| | *Counsel for Defendants* |

2

## MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **Background**

This is an action for unpaid overtime wages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. Chapter 4111, by Plaintiffs against their employer, or former employer, Trail Tavern of Yellow Springs, LLC, and Don Beard, and Christine Beard. (*See* Complaint, Doc. No. 1).

Defendants operate a restaurant in Yellow Springs, Ohio. (Complaint, ¶ 21) Defendants employ restaurant staff (including managers, hosts, servers, bussers, and kitchen staff), who are paid on an hourly basis. (Complaint ¶ 22, 24) Additionally, hourly employees, including Plaintiff, were sometimes eligible for a non-discretionary bonus payment for hours worked on the days that Defendants' business reached certain daily revenue goals for food sales. (Complaint, ¶28)

The Complaint alleges that these hourly employees, including Plaintiff, were not paid overtime compensation at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 per workweek. (Complaint, ¶ 26) Further, the non-discretionary bonus payments were not properly calculated in the computation of overtime. (Complaint, ¶ 62) Instead, hourly employees were paid straight time wages at their regular hourly rates and bonus hourly rates (Complaint, ¶ 27-¶ 28). Plaintiffs allege that Defendants' practices violate the FLSA and OMFWSA.

The Complaint also alleges that Plaintiff Craghead complained to Manager Keegan McKenna and General Manager Tracy James that she was not receiving an overtime premium for hours worked in excess of 40 per workweek. (Complaint, ¶ 41). Plaintiff further alleges that her

3

complaints were not addressed to her satisfaction, and that Defendants continued to violate the law until early 2023, after the instant lawsuit was filed. (Complaint, ¶ 43)

### B.     Procedural History

Plaintiff Craghead filed this action on October 28, 2022, alleging that Defendants failed to pay her, and other similarly situated employees, overtime compensation at the rate of one and one-half times their regular rates of pay for their hours worked in excess of forty (40) hours per workweek, and failed to properly include non-discretionary bonus payments in their regular rates of pay for purposes of calculating an overtime premium rate. (*See* Complaint, Doc. No. 1.) In the Complaint, Plaintiff's first cause of action seeks relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. for failure to pay overtime wages. Plaintiff pursued this FLSA claim on behalf of herself and all other similarly situated employees as a representative action under the FLSA's opt-in provision, 29 U.S.C. §216(b).  Plaintiff also asserted claims under Ohio law for the failure to pay overtime wages.

Defendants filed an Answer to Plaintiff's Complaint on January 27, 2023, and denied liability as to all of Plaintiff's claims. (*See* Doc. No. 12)

On January 30, 2023, the Parties filed a motion for approval of their joint stipulation of conditional class certification and for Court-ordered notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b). (Doc. No. 13) The Court issued an Order dated August 28, 2023, following the Sixth Circuit's decision in *Clark v. A&L Homecare & Training Ctr.,* 68 F. 4th 1003 (6th Cir. 2023), instructing the Parties to re-file their joint motion to comply with the standards set forth in the aforementioned *Clark* decision. Accordingly, on September 15, 2023, the Parties re-filed their motion, moving the Court for approval of their stipulation of preliminary determination on

similarly situated individuals for purposes of sending Court-authorized notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b). (Doc. No. 15)

On May 10, 2024, the Court granted the Parties' joint motion. (Doc. No. 16) The Court authorized issuance of Notice and an opportunity to opt-in to the Parties' proposed FLSA Class, defined as: "All current and former employees of Defendants' who were paid on an hourly basis and worked more than 40 hours in any workweek between October 28, 2019 and May 10, 2024. (*Id.* at PageID #92-93) In accordance with the Court's order, the Parties issued notice to the putative class. (See Declaration of Carrie J. Dyer, attached as Exhibit A, ¶7) Following a 45-day notice period, eight (8) individuals returned a consent form to opt into this action. (Dyer Dec. ¶7)

**C.      Discovery, Damage Calculations, & Settlement Negotiations**

Following the close of the opt-in notice period, the Parties engaged in informal discovery. Specifically, Plaintiffs requested, and Defendants supplied, payroll records for Plaintiff Craghead and each of the opt-in Plaintiffs (hereinafter collectively referred to as "Plaintiffs") during the applicable statute of limitations period. Using those records, Plaintiffs calculated their alleged damages. (Dyer Dec. ¶8) To calculate these figures, Plaintiffs' pay dates and total hours worked per week were first recorded on an excel spreadsheet. (Dyer Dec. ¶9) For each week during which Plaintiffs worked more than 40 hours, their total compensation for the week was also recorded. (Dyer Dec. ¶10) Plaintiffs' hourly rate was then calculated by dividing their total hours worked by their total compensation received (the weighted average hourly rate). This figure was then multiplied by 1.5 to arrive at the appropriate overtime rate. (Dyer Dec. ¶11) Finally, this overtime rate was multiplied by Plaintiffs' total overtime hours worked each week and then divided by three to account for the straight time pay that Plaintiffs already received. (Dyer Dec. ¶12)

During their review of the payroll records, Plaintiffs learned that Defendants modified their pay practices in early-2023 to calculate overtime premiums for hourly employees. (Dyer Dec. ¶13) Four of the opt-in Plaintiffs in this action began their employment with Defendants after the payroll modifications took effect. As such, these Plaintiffs had zero overtime damages pursuant to Plaintiffs' calculations. (Dyer Dec. ¶14) However, Plaintiffs' review of the payroll records for these four Plaintiffs also revealed several instances where Plaintiffs' overtime rate may have been calculated incorrectly based on the weighted average of the variable wage rates incurred by the bonus system. This calculation modestly impacted the minimal amount overtime these Plaintiffs worked during the relevant period. (Dyer Dec. ¶15)

As shown in the chart below, Plaintiffs opted to make a demand of $100 for each of these Plaintiffs to account for any such discrepancies. (Dyer Dec. ¶15) The chart includes the total overtime damages claimed for each of the remaining nine (9) Plaintiffs using the calculation method described above:

| PLAINTIFF | OVERTIME OWED |
|---|---|
| Janell Craghead | $1,625.60 |
| Allison Justice | $52.76 |
| Damien Jones | $1,490.11 |
| Jacob Schneider | $100.00 |
| Justin Hall | $1,349.79 |
| Lisa Bronson | $100.00 |
| Loren George | $100.00 |
| Ryan Jackson | $100.00 |
| Thuron Ham | $1,448.93 |

(Dyer Dec. ¶16) Following the completion of these damage calculations, the Parties engaged in settlement negotiations. (Dyer Dec. ¶17) The Parties negotiated, among other things, the amount of liquidated damages to be paid, if any, to Plaintiffs during the applicable statute of limitations periods. (Dyer Dec. ¶18) Both Parties asserted their positions and arguments as to (1)

whether Plaintiffs would automatically be entitled to an award of liquidated damages, especially in light of the relatively small amount of overtime hours the Plaintiffs actually worked (Defendants' arguments) and (2) whether Defendants exercised sufficient diligence in ensuring that their payroll practices and bonus calculations strictly met all requirements of the FLSA (Plaintiffs' arguments). (Dyer Dec. ¶19) Plaintiffs also claimed an entitlement to damages under the Ohio Prompt Pay Act for Defendants' failure to timely pay overtime wages; while Defendants argued that damages under that statue would unlikely be awarded, even if Plaintiffs prevailed on their claims at trial. (Dyer Dec. ¶¶ 20-21)

Ultimately, the Parties agreed that Plaintiffs would receive: (1) their full overtime damages claimed; (2) 100% of liquidated damages claimed; and (3) 25% of the damages claimed under the Ohio Prompt Pay Act. (Dyer Dec. ¶22) Thus, the Parties agreed that Plaintiffs would receive the following amounts each:

| PLAINTIFF | SETTLEMENT AMOUNT |
|---|---|
| Janell Craghead | $4,401.20 |
| Allison Justice | $305.52 |
| Damien Jones | $3,680.23 |
| Jacob Schneider | $100.00 |
| Justin Hall | $4,549.59 |
| Lisa Bronson | $100.00 |
| Loren George | $100.00 |
| Ryan Jackson | $100.00 |
| Thuron Ham | $3,697.85 |

**Total: $17,034.39.** (Dyer Dec. ¶23)

The Parties' settlement discussions continued for approximately two months before an acceptable resolution was achieved. (Dyer Dec. ¶24) The Parties submit that their investigation and exchange of information related to Plaintiffs' claims was sufficient to allow counsel to

7

evaluate their respective claims and defenses and make appropriate recommendations regarding the resolution of this action. (Dyer Dec. ¶25)

Defendants maintain that, should this litigation continue, Defendants have sufficient evidence contradicting Plaintiffs' allegations and accordingly, Defendants believe they will defeat Plaintiffs' claims. Notwithstanding this position, Defendants acknowledge the risks inherent in litigation. Therefore, in an effort to reach a compromise and to avoid the expense and burden of continued litigation, the Parties, without any admission of liability as to any of the asserted claims, have reached a settlement of all claims in the pending action.

**D.     Settlement Terms**

    1.     <u>Payments to Plaintiffs & Release of Claims</u>

The Parties executed a Settlement Agreement and Release of All Claims ("Settlement Agreement"), in which they agreed to a gross settlement payment of Twenty-Seven Thousand, Two Hundred and Twenty Dollars and Thirty-Three Cents ($27,220.33). (*See* Settlement Agreement, attached as Exhibit B, ¶2)

The Agreement provides for total individual settlement payments as set forth in the chart above, for a total of Seventeen Thousand, Thirty-Four Dollars and Thirty-Nine Cents ($17,034.39). The individual settlement payments for Plaintiffs represent damages comprised of the following: 1) unpaid overtime premiums for hours worked in excess of 40 per week; 2) liquidated damages, and 3) damages under the Ohio Prompt Pay Act for failure to make timely payments. (Dyer Dec. ¶27) Under this distribution, all Plaintiffs will receive 100% of the overtime wages owed to them over a three-year statute of limitations period and 100% of liquidated damages claimed. (Dyer Dec. ¶28) They will also receive 25% of the damages claimed under the Ohio Prompt Pay Act. (Dyer Dec. ¶29)

Pending approval by this Court, settlement payments to Plaintiffs will be divided equally among two checks to each Plaintiff: one as a payment for wages, less all applicable withholdings, for which an IRS Form W-2 will be issued, and the other payment for liquidated damages, which will have no withholdings and for which an IRS Form 1099 will be issued. (Settlement Agreement, ¶2)

In exchange for these payments, Named Plaintiff Craghead will provide Defendants with a general release of claims, and Opt-In Plaintiffs will provide Defendants with a wage and hour release of claims, including a release of all claims and allegations made in the lawsuit, which will be dismissed with prejudice. (Settlement Agreement, ¶3) The Parties submit to this Court that, based upon their damage calculations, the settlement payment is fair and reasonable.

2. Payments to Plaintiffs' Counsel

Finally, the Parties have agreed that, pending this Court's approval, Defendants will issue payment to Plaintiffs' counsel for attorneys' fees and litigation expenses incurred in this action in the total amount of Ten Thousand, One Hundred and Eighty-Five Dollars and Ninety-Four Cents ($10,185.94). (Settlement Agreement, ¶2(j))

II. **APPLICABLE LAW AND PROPRIETY OF COURT APPROVAL**

A. **Standard**

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Padilla v. Pelayo*, No. 3:14-cv-305-TMR, 2015 WL 4638618, at *1 (S.D. Ohio Aug. 4, 2015) (quoting *Crawford v. Lexington-Fayette Urban Cnty. Gov.*, No. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008)). "The central purpose of the FLSA is to protect covered employees against labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-

being of workers." *Id*. (quoting 29 U.S.C. § 202 (internal quotations omitted)). The FLSA's provisions are mandatory, and in general, they may not be bargained or waived, except under two circumstances. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.1982). The circumstance relevant here authorizes federal district courts to approve settlements of lawsuits for unpaid wages under the FLSA, like this action, brought in federal district court. *Id.* at 1353.

In reviewing a proposed FLSA settlement, the district court must scrutinize the proposed settlement and determine whether it is a fair and reasonable resolution of a *bona fide* dispute over the FLSA's provisions. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). To do so, courts consider several factors, including: (1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of plaintiff's success on the merits; and (5) the public interest in settlement. *Padilla*, 2015 WL 4638618, at *1 (citing *Gen. Motors Corp.*, 497 F.3d at 631). The Parties submit that their FLSA settlement satisfies each of these factors.

### B. The Parties' Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute and Should be Approved.

#### 1. There is no Indicia of Fraud or Collusion.

The Parties' counsel both have experience litigating FLSA claims, including actions claiming unpaid overtime wages. This Settlement Agreement was only achieved after extensive, good-faith investigation and arms-length negotiations between the Parties. During the course of these negotiations, the Parties concluded there were questions that could cast doubt on the ultimate outcome of the litigation. After approximately two months of negotiation, the Parties were able to agree to the terms now memorialized in the Settlement Agreement. Under these circumstances, a

10

presumption of fairness and reasonableness attaches to the Settlement Agreement. *See, e.g.*, *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, *9 (E.D. Mich. May 20, 2013) ("Here, settlement negotiations were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."); *UAW v. Gen. Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, *18 (E.D. Mich. Mar. 31, 2006) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement: It is well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.") (internal citations omitted). There is no evidence of fraud or collusion that would undermine this presumption here.

        2.    <u>The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval</u>.

The case involves allegations of unpaid wages under the FLSA. Here, the Parties dispute, among other things, Plaintiffs' entitlement to liquidated damages under the FLSA and any damages under the Ohio Prompt Pay Act. Litigating these issues any further would require costly and protracted litigation, including, but not limited to, additional formal written discovery, depositions, motion practice, a potential trial, and countless hours of preparation and related legal costs. The cost of such activities would almost immediately outstrip the maximum value of Plaintiffs' damages. A settlement, on the other hand, provides relief to Plaintiffs promptly and efficiently. As such, this factor favors this Court's approval of the Agreement.

      3.      <u>The Amount of Discovery and Investigation of Claims was Sufficient to Allow the Parties to Act Appropriately</u>.

The Parties engaged in an extensive investigation prior to entering into settlement negotiations. This investigation involved the review and exchange of documents, including Plaintiffs' payroll records, and the Parties' respective analyses of Plaintiffs' claims and computations of Plaintiffs' alleged damages. The legal issues presented in the case were also thoroughly researched by counsel for the Parties and all aspects of this dispute were well-understood by both sides. Based on the foregoing, the Parties submit to the Court that their investigation and exchange of information was sufficient to allow their counsel to evaluate the Parties' respective claims and defenses and to make appropriate recommendations regarding the resolution of this action.

      4.      <u>The Risks of Litigation and the Uncertainty of Recovery Supports Approval</u>.

Counsel for the Parties recognize that litigation entails uncertainty and risk in terms of costs, duration, and result. While Plaintiffs believe that, if litigation were to continue, they would prevail on their claims, Defendants dispute liability, contend that Plaintiffs are not entitled to liquidated damages or Ohio Prompt Pay Act damages, and deny any and all wrongdoing.

The Agreement provides Plaintiffs substantial monetary relief considering these risks. This benefit outweighs the time, expense, and risk it would take to continue to litigate this action to judgment. This settlement, therefore, is a reasonable means for the Parties to minimize future risks and litigation costs. Further, based on the various issues in dispute and the uncertainty of the outcome of Plaintiffs' claims, including the availability of liquidated damages, the Parties agree that the amounts Plaintiffs are receiving pursuant to the Agreement represent a reasonable compromise.

      5.      The Public Interest Further Supports Approval.

Finally, a swift and fair resolution of this dispute is in the public's interest. If forced to continue to litigate, the Parties would necessarily waste the judicial resources of this Court. Continued litigation will also increase attorneys' fees on both sides without necessarily substantially increasing any award for Plaintiffs. Therefore, both the Parties, and the public, would benefit from an early resolution of this matter.

**C. The Parties Submit that the Requested Attorneys' Fees & Expenses to Plaintiffs' Counsel are Proper and Reasonable.**

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Sixth Circuit has long recognized the profound importance of plaintiffs' right to recover attorneys' fees under the FLSA. *E.g., United Slate et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984). In *United Slate*, the Sixth Circuit first explained that "the purpose of § 216(b) is to insure effective access to the judicial process by providing attorneys' fees for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages…without incurring any expense for legal fees or costs." *Id; see also Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The reason the FLSA mandates an award of reasonable fees to prevailing plaintiffs is that "the monetary value of their claims is often too small to support the cost of litigating them." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021).

In calculating "reasonable" attorney's fees, courts compare a fee request to what is known as the "lodestar" value: "the number of hours worked multiplied by the prevailing hourly rates." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). There is a strong presumption that the

lodestar method yields a "reasonable" fee award, and "modifications to the lodestar are proper only in certain rare and exceptional cases." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Adcock-Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000). Indeed, the lodestar figure "already includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Rembert*, 986 F.3d at 616 (quoting *Perdue*, 559 U.S. at 553). The most important factor in determining whether a lodestar figure should be adjusted is the degree of success that the attorney obtained – where a plaintiff achieves a substantial recovery, his attorney should recover a full compensatory fee. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575 (6th Cir. 2019); *Hensley*, 461 U.S. at 435.

Importantly, courts should not place undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees "encourages the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134–35. "Neither the text nor the purpose of the FLSA supports imposing a proportionality limit on recoverable attorneys' fees." *Rembert*, 986 F.3d at 617 (holding that if courts capped awardable fees at a percentage of the monetary relief, "many workers with valid FLSA claims – the nurse who was underpaid $1,500, the laborer unpaid $900 – would be unable to attract competent counsel to represent them"). Indeed, in FLSA cases, the Sixth Circuit has often approved fee awards that are much larger than the plaintiffs' recovery. *See, e.g.*, *Fegley*, 19 F.3d at 1135 (approving fees five times in excess of recovery); *Rembert*, 986 F.3d at 616, 618 (approving $38,765 in fees where plaintiff class recovered a total of $18,961.00).

In this case, Plaintiffs' Counsel's expended hours to date and hourly rates are as follows:

| Attorney | Title | Total Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|
| Carrie Dyer, Esq. | Partner | 16.8 hours | $450 | $7,560.00 |
| Rhiannon Herbert, Esq. | Associate | 5.7 hours | $375 | $2,137.50 |
| Rebecca Hill, Esq.[1] | Associate | 7.1 hours | $250 | $1,775.00 |
| Lauren Beck | Paralegal | 4.5 hours | $195 | $877.50 |
| | | | TOTAL LODESTAR | $12,350.00 |

(*See* Dyer Declaration, Time Records of Carrie Dyer (Exhibit A-1); Time Records of Rebecca Hill (Exhibit A-2); and Time Records of Lauren Beck (Exhibit A-3); *See* Declaration and Time Records of Rhiannon Herbert (Exhibit C and C-1, respectively).

Through the date of filing this motion, Plaintiffs' Counsel current lodestar is $12,350.00. **However, Plaintiffs have agreed to accept the lower amount of $9,285.00 in fees, which Defendants have agreed to pay.**

As set forth above, Plaintiffs in this action will receive no less than 100% of the overtime wages owed pursuant to Plaintiffs' calculations, and no less than 100% of the liquidated damages owed. (Dyer Dec. at ¶28) Had this action not settled, Plaintiffs' counsel would have continued to vigorously litigate this case without any promise of success and compensation. Since a substantial and fair recovery was achieved for all Plaintiffs in this action, Plaintiffs' Counsel's fee award of $9,285 should be approved.

In addition, Plaintiffs' litigation expenses total $900.94. (*See* Expenses Summary, attached to Dyer Dec. as Exhibit A-4) All expenses were reasonably and necessarily incurred during the

---

[1] At the time this matter was filed, Attorney Hill was an Associate at Mansell Law. Attorney Hill is no longer employed at Mansell Law and was substituted for Attorney Rhiannon Herbert in December 2022. (Doc. No. 9)

course of the litigation of this action or will be incurred during the administration of the settlement payments. (Dyer Dec. at ¶45)

### III. CONCLUSION

For all of the reasons set forth above, the Parties respectfully request this Court approve the settlement agreement by entering the proposed Approval Order (attached hereto as Exhibit D).

Respectfully submitted,

| | |
|---|---|
| */s/ Carrie J. Dyer* | */s/ Shannon L. Wahl (per email auth.)* |
| Carrie J. Dyer (0090539) | Randall M. Comer (0072567) |
| *Carrie@MansellLawLLC.com* | Shannon L. Wahl (0084074) |
| Greg R. Mansell (0085197) | Benjamin D. Noll (0100251) |
| *Greg@MansellLawLLC.com* | **Martin, Browne, Hull & Harper, PLL** |
| Rhiannon M. Herbert (0098737) | 500 N. Fountain Ave. |
| *Rhiannon@MansellLawLLC.com* | P.O. Box 1488 |
| **MANSELL LAW, LLC** | Springfield, OH 45501 |
| 1457 S. High St. | Phone: (937) 324-5541 |
| Columbus, OH 43207 | Fax: (937) 325-5432 |
| Ph: 614-610-9899 | *rcomer@martinbrowne.com* |
| Fax: 614-547-3614 | *swahl@martinbrowne.com* |
| | *bnoll@martinbrowne.com* |
| *Counsel for Plaintiff* | |
| | *Counsel for Defendants* |

## CERTIFICATE OF SERVICE

      I hereby certify that on December 3, 2024, a copy of the foregoing motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's ECF system.

      /s/ *Carrie J. Dyer*
      Carrie J. Dyer (0090539)